UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

| | |
|---|---|
| JOSEPH GIGUERE, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>HOMEWORKS ENERGY, INC., MARTIJN FLEUREN, individually and MAX VEGGEBERG, individually,<br><br>    Defendants | CIVIL ACTION NO.  3:21-cv-30015 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

Plaintiff, Joseph Giguere ("Plaintiff"), on behalf of himself and all others similarly situated, hereby moves for approval of a proposed collective action partial settlement ("Settlement") in the above-captioned action. Defendants HomeWorks Energy, Inc., Martijn Fleuren, and Max Veggeberg ("Defendants") assent to this motion.

This Settlement is a fair and reasonable result for the FLSA Collective and was reached only after rigorous arms' length negotiations between the parties. Accordingly, Plaintiff hereby requests the Court issue an Order approving this collective action settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and approve the proposed Notice Form. (See Proposed Order and Proposed Notice Form, attached as Exhibits 1 and 2 and filed herewith.)

**I.     Background**

Plaintiff, Joseph Giguerre, alleged that he worked as a Crew Lead, and previously as a Technician I, for Defendants beginning November 18, 2019. (See Declaration of Raymond Dinsmore ("Dinsmore Dec.") at ¶ 13), attached as Exhibit 3 and filed herewith.)

1

Plaintiff alleged that throughout his employment and during the period of the claim from February 5, 2018 to the date of final judgment, Defendants did not pay overtime on incentive payments based on hours worked in excess of forty per week in violation of the FLSA, 29 U.S.C. § 216(b) and Massachusetts state law, M.G.L. c. 149 §§ 148, 150. *Id.* ¶ 14. The Plaintiff further alleged that Defendants violated the Massachusetts Wage Act by taking deductions against the wages of their employees pursuant to Defendant HomeWork's "disincentive" policy. Defendants deny all of these allegations.

On February 5, 2021, Plaintiff filed suit against the Defendants. Plaintiffs filed his complaint as a collective and class action lawsuit, alleging Defendants unlawfully denied Plaintiff and similarly situated employees overtime wages in violation of the Fair Labor Standards Act and Massachusetts state law. Plaintiff filed a First Amended Complaint, which is the operative complaint, on September 30, 2021. Defendants filed their Answer on October 28, 2021, asserting nine special defenses.

Initial disclosures were exchanged in June and July of 2021. The parties exchanged and responded to written discovery requests from June 2021 to January of 2022, including sufficient information to calculate alleged damages for the FLSA collective.

Plaintiff moved for conditional certification of the FLSA collective on June 15, 2022 and Defendants did not oppose. The Court granted conditional certification of the FLSA Collective on July 25, 2022, ordering notice to be issued to the proposed collective. Approximately 180 individuals opted into the FLSA collective.

The mediation was held on December 8, 2022, in which the Defendants agreed to produce additional information to calculate alleged damages for each member of the collective. Plaintiff's counsel and expert had an opportunity to review the data and the Parties were able to reach a partial settlement in principle as to the overtime claims under the FLSA. The partial settlement provides

that the parties will resolve the FLSA collective claims, but shall continue to litigate the deduction claims (Counts IV-VI of the September 30, 2021 First Amended Complaint). However, this proposed settlement shall if approved result in dismissal with prejudice of the Plaintiff's claims for unpaid overtime (Counts I-III and VII-IX of the First Amended Complaint).

The individuals who will receive shares of this settlement include all "FLSA Collective Members" consisting of the approximately 180 Crew Leads, Technician I's, and Technician II's employed by the Releasees in Massachusetts between February 5, 2018 and November 21, 2022, who have filed an opt-in form in this matter. If the Court grants preliminary approval of the Settlement Agreement, a proposed Notice and Consent Form ("Notice") will be sent to the FLSA Collective by *Simpluris*. The Notice describes the case, the proposed settlement, the plan of distribution of settlement proceeds, and invites FLSA Collective Members to submit Consent forms. The Notice also describes the manner in which FLSA Collective Members can submit an objection or opt out of the settlement, and informs the FLSA Collective members of the time and place of the final approval hearing.

As discussed below, the proposed Settlement Agreement represents a fair and reasonable result for the collective in this matter, and will allow all parties to avoid the delay, uncertainty, and expense of further litigation. Accordingly, the Parties request the Court approve the proposed collective settlement.

## II.     The Proposed Settlement Fund Distribution Plan

Pursuant to the ***Section 7.a*** of the agreement, twenty (20) calendar days after the Effective Date, Defendants shall deposit sixty-five thousand dollars ($65,000.00) into the Qualified Settlement Fund ("QSF"). Within 30 calendar days after the first installment payment due date, the Defendants will deposit an additional $60,000 into the QSF. Within 30 calendar days after the second installment payment due date, the Defendants will deposit an additional $60,000 into the

QSF. In total, Defendants will have deposited one-hundred eighty-five thousand dollars ($185,000.00) into the QSF.

Pursuant to *Section 8.b* of the Settlement Agreement, within fourteen (14) calendar days of Defendants' final deposit, the Settlement Administrator shall mail the Notice of Settlement and all Settlement Award checks to the FLSA Collective—the payments representing the collective member's final settlement share—to their last known address by first-class mail.

The settlement includes the approximately 180 Crew Leads, Technician I's, and Technician II's employed by the Releasees in Massachusetts between February 5, 2018 and November 21, 2022, who have filed an opt-in form in this matter. The Notice and Consent Form will be sent pursuant to contact information provided by Defendants and acquired by the Settlement Administrator.

The Total Settlement Amount agreed upon by the parties is $185,000.00. After deductions for attorneys' fees, costs, incentive payments to lead Plaintiff Joseph Giguere (described further below), and the costs of settlement administration, the remaining net amount ("Net Fund") of the settlement will be distributed to FLSA Collective Members.

**III.    The Proposed Settlement is Fair, Reasonable, and Adequate.**

It is well established that settlements are favored, particularly in collective actions where substantial resources may be conserved by avoiding the time and cost of protracted litigation. See e.g., Newberg on Class Actions, § 11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); see also *Ismert & Assocs., Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 550 (1st Cir. 1986) (recognizing a "well-established policy favoring the private settlement of disputes[.]"); *E.E.O.C. v. Astra U.S.A.*, Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement of class action claims."); *Cities Service Oil Co. v. Coleman Oil Co.*, 470 F.2d 925, 929 (1st Cir.1972)

("There is an obvious public policy favoring the amicable settlement of litigation, and agreements accomplishing this result will be disregarded for only the strongest of reasons."), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973). The advantages to the parties and courts are particularly apparent in the compromise of collective actions. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (citing the "complexity, expense and likely duration of the litigation [which] weighs heavily in favor of final approval of this Settlement.").

Before granting approval of a proposed collective action settlement, the Court must find that the settlement is fair, reasonable, and adequate. See *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009). "The key question is whether the relief provided by the settlement is reasonable in relation to the likely outcome were the case to proceed to trial." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 345 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015). A presumption of fairness of a proposed settlement is established where the parties can show that: (1) the settlement was the product of arms-length bargaining; (2) sufficient discovery and investigation has been taken to enable counsel and the court to act intelligently; (3) the proponents of the settlement are counsel experienced in similar litigation; and (4) the number of objectors or interests they represent is not large when compared to the collective as a whole. *See* Newburg on Class Actions § 11:41.

Here, this Court should approve this settlement. An examination of each of the four Newburg factors demonstrates that the settlement, as set forth in the attached Agreement, is entitled to the presumption that it is fair, reasonable, and adequate to the members of the collective, and "lies within the range of reasonableness." *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005) (analyzing "the amount of the settlement fund in contrast to the best possible recovery").

The Agreement documenting the proposed settlement was the result of approximately two years of litigation. Defendants contended at mediation that even if Plaintiff succeeded under the FLSA, the FLSA collective claims are fairly limited to a relatively small timeframe. In particular, Defendants argued that the FLSA has a two-year statute of limitations period, and Plaintiff filed his complaint on February 5, 2021. Defendants contend the relevant time-period is February 5, 2019 to March 31, 2021, when HomeWorks began including incentive payments to calculate employees' regular rate for overtime purposes. Moreover, any recovery would be limited to those individuals who timely filed opt-ins, and each individual would be limited to the two years preceding the date they filed their opt in. In this case, the vast majority of opt-ins filed between August and November 2022, which means the period of recovery is really limited to about 5-8 months.

Defendants further argued that Plaintiff would face significant challenges in maintaining an FLSA collective action past the decertification stage, claiming that Courts routinely deny certification of a class or collective action where the claims require highly individualized assessments, and that a number of individualized factors would impact the claims (members of the purported collective worked under the supervision of different managers in different branch locations, and Defendants claimed application of guidance on calculating incentive payments varied based on location, manager, and area of focus for the particular manager).

In sum, liability in the present matter is not certain, and the issues present significant defenses to liability and FLSA collective certification which weigh heavily in favor of approval of the settlement for putative FLSA Collective members.

**IV.    This Court should approve Joseph Giguere's incentive award.**

Joseph Giguere is similarly situated to other FLSA collective members because he worked in the positions of a Crew Lead, and previously as a Tech I during the relevant time period. In

addition, his incentive pay was not paid out at an overtime rate for hours worked over forty in a week. Accordingly, his claims are similar to those of the FLSA Collective because he has suffered the same injury as the other collective members. Giguere took the initiative and risk of filing this lawsuit on behalf of his co-workers.

The Court should also approve an incentive award of Three Thousand Dollars ($3,000.00) to Joseph Giguere. This incentive payment is fair and reasonable. *See, e.g., Woolfson v. Caregroup, Inc.,* 2010 WL 10063268, at *7-8 (D. Mass. Sept. 13, 2010) (approving incentive awards in amount of $5,000 to each named plaintiff to compensate them for risks borne in bringing litigation and for the time and effort expended in assisting in the prosecution of the litigation and the ultimate recovery). Joseph Giguere was a champion for the collective by filing this lawsuit. He participated in developing the litigation strategy and has been an important resource to Collective/Class Counsel in evaluating the claims and the facts and engaging in settlement discussions. Joseph Giguere also served as the primary point of communication with other collective members, and expended time attending a full day of mediation. See Dinsmore Dec. at ¶ 29.

The courts have widely recognized that such payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class or collective settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding incentive payments of between $9,000 and $18,000 to named plaintiffs; "[i]ncentive awards are recognized as serving an important function in promoting class action settlements, particularly whereas here, the named plaintiffs participated actively in the litigation"); "In wage and hour cases, "awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (citing *Scovil v. FedEx Ground Package Sys.*, Inc., No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014).

> In examining the reasonableness of a requested incentive award, courts consider: "(1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative effects that they have risked."

*Id.* at *3. *See also In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.,* No. MDL 09-2067-NMG, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014 ("The purpose of such incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *In re Compact Disc Min. Adver. Price Antitrust Litig.,* 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); *Savett, et al.,* "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws").

The Federal District Court of Massachusetts has recognized the availability of incentive awards in FLSA collective action settlements such as this one. <u>Lauture v. A.C. Moore Arts & Crafts, Inc.,</u> No. 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017)

In this case, Joseph Giguere put himself on the line for the benefit of his co-workers, and the incentive payment requested on his behalf is similar to or less than payments approved by courts in a number of similar cases.

**V.      The requested attorneys' fees are fair and reasonable and supported by the applicable precedent.**

A reasonable amount of fees is determined in FLSA collective actions pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F.Supp.2d 212, 216 (D.Mass.2004) (applying the lodestar standard to an FLSA action). The resulting lodestar figure is presumptively reasonable, although the Court retains discretionary authority to adjust the figure upward or downward. *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir.1992); *Marrotta v. Suffolk Cnty.*, 726 F. Supp. 2d 1, 4 (D. Mass. 2010) (same).

Here, Collective counsel seeks an award of attorney fees in the amount of $125,000 - commensurate with their lodestar. The purpose of fee shifting statutes is to attract *competent and effective* representation for economically vulnerable individuals with *small claim amounts*. "[R]easonable attorney's fees . . . are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside v. Rivera*, 477 U.S. 561, 567 (1986) (upholding award of $245,456.25 in attorney fees in successful civil rights action where attorneys recovered a total of $66,700 for clients). It is true that "the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded[.]" *Id.* at 585.  However, fee shifting statutes do not require attorneys' fees awards to be proportional to the amount of the underlying award of damages because "[a]rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts, and would be totally inconsistent with Congress' purpose of ensuring sufficiently vigorous enforcement of civil rights." *Id.* at 564 (emphasis added).

9

Courts within this district follow the same rule when attorney fees are sought under fee-shifting statutes.[1] "The only reason the victory appears so small is that Loiselle paid his employees so little in the first place. … Equal protection requires the Court to extend the rule of law to even the lowest paid members of the workforce." *Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 212 (D. Mass. 2001) (awarding *$184,231.75* in attorney fees and costs for recovering a RICO award of *$1,018.56* in damages for their client). *See* also *Rogers v. Cofield*, 935 F. Supp. 2d 351, 386 (D. Mass. 2013) (reasonable lodestar awarded which exceeded recovery awarded to client in civil rights fee shifting claims); *Lewis v. Kendrick*, 944 F.2d 949, 957 (1st Cir. 1991) ("The fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it."); *Poy v. Boutselis*, 352 F.3d 479, 488 (1st Cir. 2003) (remanding for calculation of attorney fees since plaintiff had been a "prevailing party" recovering $35,000 in compensatory and punitive damages).

Further, monetary damages is not the sole, or even the most important measure of success. "[T]he relief actually achieved" or "the societal importance of the right which has been vindicated" is also of great importance. *Coutin v. Youg & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 388 (1st Cir. 1997).

Here, the parties' proposed settlement will make Joseph Giguere a "prevailing party" under our jurisprudence, creating a settlement fund of $60,000.00 for alleged overtime violations for himself and his fellow opt-ins. Public policy considerations support payment of the full lodestar fee because the FLSA is a remedial statute designed to protect the wages of workers. *See A.H.*

---

[1] Other Circuits hold similarly. "Congress enacted fee shifting . . . precisely because the expected monetary recovery in many cases was too small to attract **effective** legal representation." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (emphasis added); "Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are **disproportionate** to the plaintiff's recovery." *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011) (italics in original, bold added).

*Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted).

The recovery for the collective is equivalent to two times (2x) Plaintiffs' calculation of overtime backpay, assuming a two-year statute of limitations, for the FLSA collective. The lawsuit has achieved greater protections for Joseph Giguere, and hopefully also for those other citizens in the community at large (including but not limited to the FLSA collective members here). In the circumstances of this case, therefore, "reasonable fees should be paid for time productively spent without any discount…." *Coutin*, 124 F.3d 331 at 399.

Furthermore, the rates charged are reasonable and consistent with rates awarded to attorneys in similar circumstances within this district. *See, e.g., DiFiore v. Am. Airlines*, No. 07–10070, 2010 WL 623635, at *5 (D.Mass. Feb. 18, 2010) (awarding lead attorney in a Massachusetts Tips Law action an hourly rate of $400); *Tuli v. Brigham & Women's Hosp., Inc.*, No. 07–12338, Mem. and Order Granting Att'ys' Fees, ECF No. 359, at *3–4 (D. Mass. Jun. 8, 2009) (Gertner, J.) (awarding the following hourly rates in a hostile work environment and retaliation action: $630–735 for partners, $570–615 for lead counsel, $410–495 for a fourth year associate, $320–385 for a second year associate, and $320 for a first year associate); *Walsh v. Boston Univ.*, 661 F.Supp.2d 91, 111 (D.Mass.2009) (awarding lead attorney in employment discrimination action an hourly rate of $350 an hour).

Here, Attorney Dinsmore is a partner at the firm of Hayber, McKenna & Dinsmore, LLC, and a firm with three locations in Massachusetts and Connecticut that primarily focuses on employee civil rights cases and wage and hour class actions. An attorney with 17 years of experience, he has been selected by *Super Lawyers* as a Rising Star in the field of Employment Law in 2015-2019, and was selected as a *Super Lawyer* from 2020-2022. He represents plaintiffs

in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations. Dinsmore Decl. at ¶¶ 5--12.  The rate claimed by Attorney Dinsmore for prosecuting class actions is $500 per hour and may be below the average rate for an attorney of his experience and credentials when controlling for inflation.[2]  Attorney Dinsmore and his firm have devoted 596.7 hours to this litigation.  The time may be summarized as follows:

| Attorney | Hours | Rate / Hour | Total |
|---|---|---|---|
| Attorney Raymond Dinsmore (17 years of practice) | 170.4 | $350/500 | $82,035.00 |
| Attorney Richard Hayber (31 years of practice) | 13.9 | $500 | $6,950.00 |
| Attorney Thomas Durkin (7 years of Practice) | 38.6 | $275/300 | $11,572.50 |
| Attorney Michael Petela (14 years of practice) | 40.7 | $400 | $16,280.00 |
| Ellen Wallin (Paralegal) | 3.9 | $125 | $487.50 |
| Shari Belanger (Paralegal) | 327.5 | $125 | $40,937.50 |
| Karen Dixon (Paralegal) | 1.7 | $125 | $212.50 |
| Total | | | $158,475.00 |

VI. **This Court Should Approve the Proposed Distribution Plan Contained in the Settlement Agreement.**

Pursuant to section 8.c. of the Settlement Agreement, through the proposed administrator *Simpluris*, the parties will mail the Notice and settlement checks within 14 days of the Defendants' final deposit into the Qualified Settlement Fund.

---

[2]     It should be noted here that the rates awarded in these cases are from 2010 or earlier. When controlling for inflation, according to the Bureau of Labor statistics CPI inflation calculator, from January of 2010 to February of 2023 (the latest month for which date is available) the rates would be 38.84% higher.

## VII. Conclusion

For the reasons set forth above, Plaintiff respectfully requests that this Court grant approval of the proposed settlement.

Dated: August 2, 2023

| Respectfully Submitted, | With Assent, |
|---|---|
| PLAINTIFF,<br>JOSEPH GIGUERE, individually and on behalf of all others similarly situated, | DEFENDANTS,<br>HOMEWORK ENERGY, INC, MARTIJN FLEUREN and MAX VEGGEBERG, |
| By his Attorneys: | By their Attorneys: |
|   */s/ Raymond Dinsmore*<br>Raymond Dinsmore, Esq. (BBO # 667340)<br>rdinsmore@hayberlawfirm.com<br>Hayber, McKenna & Dinsmore, LLC<br>One Monarch Place, Suite 1340<br>Springfield, MA 01144<br>Tel: (413) 785-1400; Fax: (860) 218-9555<br><br>  */s/ Richard E. Hayber*<br>Richard E. Hayber, Esq. (Bar # ct11629)<br>rhayber@hayberlawfirm.com<br>Hayber, McKenna & Dinsmore, LLC<br>750 Main Street, Suite 904<br>Hartford, CT 06103<br>Tel: (860) 920-5362; Fax: (860) 218-9555 |   */s/ Douglas J. Hoffman*<br>Douglas J. Hoffman, Esq. (BBO #640472)<br>Douglas.Hoffman@jacksonlewis.com<br><br>  */s/ Keerthi Sugumaran*<br>Keerthi Sugumaran, Esq. (BBO #682822)<br>Keerthi.Sugumaran@jacksonlewis.com<br>Jackson Lewis PC<br>75 Park Plaza, 4th Floor<br>Boston, MA 02116<br>Tel: (617) 367-0025; Fax: (617) 367-2155 |

## CERTIFICATE OF SERVICE

      I, Raymond Dinsmore, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 2, 2023.

                                                      */s/ Raymond Dinsmore*
                                                       Raymond Dinsmore, Esq.