UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

| | |
|---|---|
| JOSEPH GIGUERE, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>HOMEWORKS ENERGY, INC., MARTIJN FLEUREN, individually and MAX VEGGEBERG, individually,<br><br>  Defendants | CIVIL ACTION NO. 3:21-cv-30015 |

## CORRECTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF FLSA COLLECTIVE SETTLEMENT

Plaintiff, Joseph Giguere ("Plaintiff"), hereby moves for approval of a proposed collective action partial settlement ("Settlement") in the above-captioned action. On August 2, 2023, Plaintiff filed his Assented-To Motion for Approval of FLSA Collective Settlement. (Dkt. 87). At the hearing on this motion dated January 23, 2024, the Court ordered that Plaintiff submit this corrected memorandum clarifying and supplementing the following (Dkt. 108):

1) the precise procedure for notifying collective members of the settlement administration;

2) a reasonable estimate for the costs of settlement administration;

3) a copy of the settlement agreement;

4) an explanation for how damages will be calculated for each collective member;

5) detailed time records;

6) evidentiary support (such as affidavits of local counsel) for the hourly rates claimed.

1

Plaintiff submits this Corrected Memorandum to address each of the requests made by the Court in its order dated January 23, 2024 and appends the following records to substantiate Plaintiff's representations:

1) FLSA Notice to Collective (Exhibit A);

2) Records from Third Party Administrator, Simpluris, Inc., concerning costs of administration (Exhibits B and C);

3) Settlement Agreement (Exhibit D)

4) Affidavit of Dr. Liesl Fox regarding methodology for calculation of damages (Exhibit E);

5) Detailed time records (Exhibit F)[1];

6) Affidavits of Matthew Thomson, Esq. and Jeffrey Morneau, Esq. in support of hourly rates claimed (Exhibits G and H); and

Assuming this motion is approved, members of the Collective will receive settlement checks and a copy of the proposed Notice. *Exhibit A*. Members of the Collective will each receive a base amount of $50.00 plus individualized shares of the settlement that are based on their actual damages (i.e. total overtime earned but not received during the period of the claim.) *See, Id.* The records provided, including the supplements identified above, confirm that the Settlement Agreement is a fair and reasonable result for the FLSA Collective and was reached only after rigorous arms' length negotiations between the parties. The portion of the settlement that will be received by the Collective represents over 150% of the single overtime damages under the Fair Labor Standards' Act two-year statute of limitations net of all fees, costs and administrator's expenses. *See, Exhibit E, Affidavit of Dr. Liesl Fox* at ¶ 7. Unlike the Massachusetts Wage Act,

---

[1] Subject to pending Motion for Leave to File Exhibit *Ex Parte* and Under Seal.

the damages available for those aggrieved under the FLSA is limited to single overtime damages unless the Defendant fails to prove that the violation "was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. If the Defendant fails to show "good faith" then the court may award an equal amount as "liquidated damages." *Id.* The statute of limitations for FLSA claims is limited to two years. 29 U.S.C. § 255. However, if the Plaintiff can prove that the employer's violation of the FLSA was "willful" the statute is extended for an extra year. *Id.* This settlement, which pays the Collective over 150% of their single damages for the two-year FLSA period, and which preserves their deductions claims under the proposed Massachusetts Rule 23 class, is clearly fair and reasonable to the class.

The terms of the Settlement, which allocate $125,000 to Plaintiff's counsel for fees and costs, are also fair and reasonable. Pursuant to paragraph 3(a)(v) of the Settlement, the settlement terms were intended to resolve the Plaintiff and Collective's claims for overtime compensation and "any and all claims for attorney fees for any work performed concerning this Lawsuit through an including the date of execution of this Settlement Agreement, as well as any fees and costs related to approval or administration of this Agreement." *Exhibit D* at ¶ 3(a)(v). At the time that Plaintiff submitted the original motion to approve the FLSA Collective claims, Plaintiff's counsel's lodestar was $158,475.00. *See Exhibit K, Declaration of Raymond Dinsmore in Support of Corrected Memorandum of Law in Support of Plaintiff's Motion for Approval of FLSA Collective Action* ("*Dinsmore Aff.*") at ¶ 26. Since then, counsel has incurred an additional 12.70 hours in furtherance of resolving the FLSA claims and will incur even more time connected with the administration and payout of the settlement to the Collective. *Dinsmore Aff.* at ¶ 27. Even at the time of filing, the fees sought by Plaintiff's counsel represented 79% of total lodestar (or $395 per hour in fees). Although Plaintiff's counsel believes that $500.00 per hour is a fair hourly rate

for class and collective action representation in Western Massachusetts, that actual hourly rate that he will receive under this agreement is reduced by the facts that the fee sought: 1) is 79% percent of the total lodestar; 2) does not reflect additional time spent briefing and arguing the motion; 3) does not reflect the additional time that will be spent finalizing the settlement and ensuring class payment; 4) does not reflect out-of-pocket expenses incurred by Plaintiff's counsel totaling $7,282.00 (attributed 50% of costs incurred prior to August 2023 to the FLSA portion of the claims). *See, Exhibit I, Report of Out-of-Pocket Expenses*. When accounting for these deductions, Plaintiff's counsel's realized hourly rate is approximately 70% of total lodestar, or $350 per hour. This fee award is fair and reasonable, particularly when Plaintiff's counsel's work resulted in a settlement representing over 150% of the collective's single overtime damages. Affidavits of Attorney Jeffrey Morneau and Matthew Thomson, both skilled and experienced class action practitioners, attest that the hourly rates sought in this case are fair and reasonable. *Exhibits G, H*.

Accordingly, Plaintiff hereby requests the Court issue an Order approving this collective action settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and approve the proposed Notice Form. *See, Exhibit J, Proposed Order,* .

**I.     Background**

Plaintiff, Joseph Giguere, alleged that he worked as a Crew Lead, and previously as a Technician I, for Defendants beginning November 18, 2019. *Dinsmore Aff.* at ¶ 13. Plaintiff alleged that throughout his employment and during the period of the claim from February 5, 2018 to the date of final judgment, Defendants did not pay overtime on incentive payments based on hours worked in excess of forty per week in violation of the FLSA, 29 U.S.C. § 216(b). *Id.* ¶ 14.

On February 5, 2021, Plaintiff filed suit against the Defendants (Dkt. 1). Plaintiff filed his complaint as a collective and class action lawsuit, alleging Defendants unlawfully denied Plaintiff and similarly situated employees overtime wages in violation of the Fair Labor Standards Act.

Plaintiff filed a First Amended Complaint, which is the operative complaint, on October 4, 2021 (Dkt. 24). Defendants filed their Answer on June 9, 2022, asserting nine special defenses (Dkt. 27).

Initial disclosures were exchanged in June and July of 2021. The parties exchanged and responded to written discovery requests from June 2021 to January of 2022, including sufficient information to calculate alleged damages for the FLSA collective. *Exh. K, Dinsmore Aff.* at ¶ 16.

Plaintiff moved for conditional certification of the FLSA collective on June 15, 2022 and Defendants did not oppose (Dkt. 46). The Court granted conditional certification of the FLSA Collective on July 25, 2022, ordering notice to be issued to the proposed collective. Approximately 175 individuals opted into the FLSA collective (Dkt. 51).

Mediation was held on December 8, 2022 with Hon. Stephen Neel in which the Defendants agreed to produce additional information to calculate alleged damages for each member of the collective. *Dinsmore Aff.* at ¶ 17. Plaintiff's counsel and expert had an opportunity to review the data and the Parties were able to reach a partial settlement in principle as to the overtime claims under the FLSA. *Id.* at ¶ 18. The partial settlement provides that the parties will resolve the FLSA collective claims, but shall continue to litigate the deduction claims (Counts IV-VI of the September 30, 2021 First Amended Complaint). *See, Exhibit D, Partial Settlement Agreement.* However, this proposed settlement shall, if approved, result in dismissal with prejudice of the Plaintiff's claims for unpaid overtime (Counts I-III and VII-IX of the First Amended Complaint). *Id.* The settlement agreement was also conditioned on the release of "any and all claims for attorney fees for any work performed concerning this Lawsuit through and including the date of execution of this Settlement Agreement as well as any fees and costs related to approval or administration of this Settlement Agreement." *Exhibit D* at ¶ 3(a)(v). Resolving counsel's

attorneys fees was a component of damages in the underlying FLSA matter and was part of the overall negotiation concerning resolution of the FLSA claims.

The individuals who will receive shares of this settlement include all "FLSA Collective Members" consisting of the approximately 175 Crew Leads, Technician I's, and Technician II's employed by the Releasees in Massachusetts between February 5, 2018 and November 21, 2022, who have filed an opt-in form in this matter. Subject to approval by the Court, Simpluris will issue Notices and check payments to all Opt-Ins. Each member of the Collective shall receive a base payment of $50.00, regardless of actual damages, plus additional amounts reflective of their individual overtime damages during the applicable period of the claim. Settlement checks shall contain language on the endorsement releasing the FLSA claims of recipients who sign and deposit said checks.

As discussed below, the proposed Settlement Agreement represents a fair and reasonable result for the collective in this matter, and will allow all parties to avoid the delay, uncertainty, and expense of further litigation. Accordingly, the Parties request the Court approve the proposed collective settlement.

**II.     The Proposed Settlement Fund Distribution Plan**

Pursuant to the Section 7.a of the agreement, twenty (20) calendar days after the Effective Date, Defendants shall deposit sixty-five thousand dollars ($65,000.00) into the Qualified Settlement Fund ("QSF") *Exhibit D*. Within 30 calendar days after the first installment payment due date, the Defendants will deposit an additional $60,000 into the QSF. Within 30 calendar days after the second installment payment due date, the Defendants will deposit an additional $60,000

into the QSF. In total, Defendants will have deposited one-hundred eighty-five thousand dollars ($185,000.00) into the QSF. *Id.*

Pursuant to *S*ection 8.b of the Settlement Agreement, within fourteen (14) calendar days of Defendants' final deposit, the Settlement Administrator shall mail the Notice of Settlement Distribution and all Settlement Award checks to the FLSA Collective—the payments representing the collective member's final settlement share—to their last known address by first-class mail.

The settlement includes the approximately 175 Crew Leads, Technician I's, and Technician II's employed by the Releasees in Massachusetts between February 5, 2018 and November 21, 2022, who have filed an opt-in form in this matter.

The Total Settlement Amount agreed upon by the parties is $185,000.00. After deductions for attorneys' fees/costs (proposed at $125,000), incentive payments to lead Plaintiff Joseph Giguere (proposed at $3,000), and the costs of settlement administration ($2,922.71 previously incurred for Notice and $5,827.41 for Distribution), the remaining net amount ("Net Fund") of the settlement (estimated at $48,249.88) will be distributed to FLSA Collective Members.

### III.   The Proposed Settlement is Fair, Reasonable, and Adequate.

It is well established that settlements are favored, particularly in collective actions where substantial resources may be conserved by avoiding the time and cost of protracted litigation. See e.g., Newberg on Class Actions, § 11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); see also *Ismert & Assocs., Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 550 (1st Cir. 1986) (recognizing a "well-established policy favoring the private settlement of disputes[.]"); *E.E.O.C. v. Astra U.S.A.*, Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement of class action claims."); *Cities Service Oil Co. v. Coleman Oil Co.*, 470 F.2d 925, 929 (1st Cir.1972) ("There is an obvious public policy favoring the amicable settlement of litigation, and agreements

accomplishing this result will be disregarded for only the strongest of reasons."), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973). The advantages to the parties and courts are particularly apparent in the compromise of collective actions. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (citing the "complexity, expense and likely duration of the litigation [which] weighs heavily in favor of final approval of this Settlement.").

Before granting approval of a proposed collective action settlement, the Court must find that the settlement is fair, reasonable, and adequate. See *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009). "The key question is whether the relief provided by the settlement is reasonable in relation to the likely outcome were the case to proceed to trial." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 345 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015). A presumption of fairness of a proposed settlement is established where the parties can show that: 1) the settlement was the product of arms-length bargaining; 2) sufficient discovery and investigation has been taken to enable counsel and the court to act intelligently; and 3) the proponents of the settlement are counsel experienced in similar litigation. *See* Newburg on Class Actions § 11:41.

Here, this Court should approve this settlement. An examination of each of the Newburg factors demonstrates that the settlement, as set forth in the Agreement (*Exhibit D*), is entitled to the presumption that it is fair, reasonable, and adequate to the members of the collective, and "lies within the range of reasonableness." *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005) (analyzing "the amount of the settlement fund in contrast to the best possible recovery").

The Agreement documenting the proposed settlement was the result more than two years of litigation. Defendants contended at mediation that even if Plaintiff succeeded under the FLSA, the FLSA collective claims are fairly limited to a relatively small timeframe. In particular,

Defendants argued that the FLSA has a two-year statute of limitations period, and Plaintiff filed his complaint on February 5, 2021. Defendants contend the relevant time-period is February 5, 2019 to March 31, 2021, when HomeWorks began including incentive payments to calculate employees' regular rate for overtime purposes, a change which was the result of the claims brought in this matter. Moreover, any recovery would be limited to those individuals who filed opt-ins, and each individual would potentially be limited to the two years preceding the date they filed their opt in. In this case, the vast majority of opt-ins filed their opt-in forms between August and November 2022, which means the period of recovery is limited to about 5-8 months.

Defendants further argued that Plaintiff would face significant challenges in maintaining an FLSA collective action past the decertification stage, claiming that Courts routinely deny certification of a class or collective action where the claims require highly individualized assessments, and that a number of individualized factors would impact the claims (members of the purported collective worked under the supervision of different managers in different branch locations, and Defendants claimed application of guidance on calculating incentive payments varied based on location, manager, and area of focus for the particular manager).

The funds allocated in the settlement agreement to satisfy the claims of the collective will result in payment of over 150% of the single overtime damages that the Collective would stand to receive under the Fair Labor Standard Act's two-year statute of limitations. *Exh. E, Affidavit of Dr. Liesl Fox* at ¶ 7. Dr. Fox calculated the value of the Collective's overtime claims by analyzing the pay records for each member of the collective and determined that collective member's damages under both a two-year statute of limitations and a three-year statute of limitations. *Id.* at ¶¶ 4-5. The damages for each member of the collective are based on the actual amount of overtime that said member would have earned during the period of the claim. *Id.* at ¶ 6. On January 23, 2023, Dr. Fox determined that the single combined overtime damages for Collective, assuming a

two-year statute of limitations was $31,809.60. *Id.* at ¶ 7.  If damages were to be based on a three-year statute of limitations, which presumes that Plaintiffs would successfully prove that Defendants' violations were "willful," then the single damages of the Collective total $91,754.70. *Id.*

The agreed-upon settlement, which will result in payment to the Collective of approximately $48,249.88, represents over 150% of the single overtime damages of the Collective over the standard two-year statute of limitations.  Plaintiff believes that this settlement is clearly "fair, reasonable and adequate."

### IV.    This Court should approve Joseph Giguere's incentive award.

Joseph Giguere is similarly situated to other FLSA collective members because he worked in the positions of a Crew Lead and Tech I during the relevant time period. In addition, his incentive pay was not paid out at an overtime rate for hours worked over forty in a week. Accordingly, his claims are similar to those of the FLSA Collective because he has suffered the same injury as the other collective members.  Giguere took the initiative and risk of filing this lawsuit on behalf of his co-workers.

The Court should also approve an incentive award of Three Thousand Dollars ($3,000.00) to Joseph Giguere. This incentive payment is fair and reasonable. *See, e.g., Woolfson v. Caregroup, Inc.,* 2010 WL 10063268, at *7-8 (D. Mass. Sept. 13, 2010) (approving incentive awards in amount of $5,000 to each named plaintiff to compensate them for risks borne in bringing litigation and for the time and effort expended in assisting in the prosecution of the litigation and the ultimate recovery). Joseph Giguere was a champion for the collective by filing this lawsuit. He participated in developing the litigation strategy and has been an important resource to Collective/Class Counsel in evaluating the claims and the facts and engaging in settlement discussions. *Exh. K,*

*Dinsmore Aff.* at ¶ 35.  Joseph Giguere also served as the primary point of communication with other collective members, and expended time attending a full day of mediation. *Id.* at ¶ 34.

The courts have widely recognized that such payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class or collective settlements.  *See, In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding incentive payments of between $9,000 and $18,000 to named plaintiffs; "[i]ncentive awards are recognized as serving an important function in promoting class action settlements, particularly whereas here, the named plaintiffs participated actively in the litigation"); "In wage and hour cases, "awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (citing *Scovil v. FedEx Ground Package Sys.*, Inc., No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014).

> In examining the reasonableness of a requested incentive award, courts consider: "(1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative effects that they have risked."

*Id.* at *3. *See also, In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.,* No. MDL 09-2067-NMG, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014 ("The purpose of such incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *In re Compact Disc Min. Adver. Price Antitrust Litig.,* 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); *Savett, et al.,* "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne

11

the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws").

The Federal District Court of Massachusetts has recognized the availability of incentive awards in FLSA collective action settlements such as this one. *Lauture v. A.C. Moore Arts & Crafts, Inc.,* No. 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017)

In this case, Joseph Giguere put himself on the line for the benefit of his co-workers, and the incentive payment requested on his behalf is similar to or less than payments approved by courts in a number of similar cases.

V. **The requested attorneys' fees are fair and reasonable and supported by the applicable precedent.**

As of August 2, 2023, the date that Plaintiff submitted his Assented-To Motion for Approval of FLSA Collective Settlement, his legal counsel had incurred $158,754.00 in legal fees and $7,282.00 in out-of-pocket expenses attributable to the FLSA portion of this matter. *Exh. K, Dinsmore Aff.* at ¶¶ 26; 31. Counsel's current time records, which will be produced subject to the result of a pending Motion for Leave to File Exhibit *Ex Parte* and Under Seal, will be identified as Exhibit F to this motion. Determining the appropriate amount of attorney's fees in this matter is complicated by two factors: 1) the fact that settlement resolves only some of the fee shifting claims advanced in the lawsuit; and 2) Defendant's position during settlement resolution is that the Partial Settlement Agreement should resolve counsel's attorney's fees incurred prior to the date of the FLSA settlement. *Exhibit D* at ¶ 3(a)(v) (conditioning settlement on resolution of "any and all claims for attorney fees for work performed concerning this Lawsuit through and including the date of execution of this Settlement Agreement, as well as any fees and costs related to approval or administration of this Settlement Agreement.") A significant component of the parties'

negotiations centered on resolution of attorney's fees. Defendant desired a resolution that resolved claims for outstanding attorney's fees from commencement of this Lawsuit and through execution of the Settlement Agreement, including any fees and cots related to approval or administration of the agreement. *Id.* Up to the date of settlement, Plaintiff's counsel's fees related to FLSA vs. Rule 23 portions of the case were largely one and the same. The parties' Partial Settlement Agreement thus reflects an allocation that accounts for time spent prosecuting the claims released by the Partial Settlement Agreement.

Plaintiff's original Motion for Approval of FLSA Settlement sought an award of $125,000 for Plaintiff's fees and costs. Plaintiff's lodestar as of the date of filing the Motion for Approval was $158,754. *Exhibit K* at ¶ 26. The award sought of $125,0000 represented approximately 79% of Plaintiff's counsel's total lodestar as of that time. When the Court accounts for Plaintiff's counsel's out of pocket legal expenses of $7,282.00 (representing half of the expenses incurred as of the date of the filing of the Motion for Approval), the additional time spent in furtherance of FLSA approval (12.7 hours), plus the time that counsel will incur brining this matter to full resolution and ensuring pay out for the Collective (estimated 8 hours), the award sought is actually closer to 70% of lodestar which would result in a realized hourly rate of $350.00. While Plaintiff asserts that $500.00 hour is a fair hourly rate for a lawyer with seventeen years of legal experience who handles extremely complicated and financially risk class action litigation, the realized hourly rate of $350.00 is substantially more than fair to the Collective. *Exhibits G, H*.

A reasonable amount of fees is determined in FLSA collective actions pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F.Supp.2d 212, 216

(D.Mass.2004) (applying the lodestar standard to an FLSA action). The resulting lodestar figure is presumptively reasonable, although the Court retains discretionary authority to adjust the figure upward or downward. *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir.1992); *Marrotta v. Suffolk Cnty.*, 726 F. Supp. 2d 1, 4 (D. Mass. 2010) (same).

Here, Collective counsel seeks an award of attorney fees and costs in the amount of $125,000. The purpose of fee shifting statutes is to attract *competent and effective* representation for economically vulnerable individuals with *small claim amounts*. "[R]easonable attorney's fees . . . are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside v. Rivera*, 477 U.S. 561, 567 (1986) (upholding award of $245,456.25 in attorney fees in successful civil rights action where attorneys recovered a total of $66,700 for clients). It is true that "the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded[.]" *Id.* at 585. However, fee shifting statutes do not require attorneys' fees awards to be proportional to the amount of the underlying award of damages because "[a]rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts and would be totally inconsistent with Congress' purpose of ensuring sufficiently vigorous enforcement of civil rights." *Id.* at 564 (emphasis added).

Courts within this district follow the same rule when attorney fees are sought under fee-shifting statutes.[2] "The only reason the victory appears so small is that Loiselle paid his employees so little in the first place. … Equal protection requires the Court to extend the rule of law to even

---

[2] Other Circuits hold similarly. "Congress enacted fee shifting . . . precisely because the expected monetary recovery in many cases was too small to attract **effective** legal representation." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (emphasis added); "Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are **disproportionate** to the plaintiff's recovery." *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011) (italics in original, bold added).

14

the lowest paid members of the workforce." *Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 212 (D. Mass. 2001) (awarding *$184,231.75* in attorney fees and costs for recovering a RICO award of *$1,018.56* in damages for their client). *See* also *Rogers v. Cofield*, 935 F. Supp. 2d 351, 386 (D. Mass. 2013) (reasonable lodestar awarded which exceeded recovery awarded to client in civil rights fee shifting claims); *Lewis v. Kendrick*, 944 F.2d 949, 957 (1st Cir. 1991) ("The fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it."); *Poy v. Boutselis*, 352 F.3d 479, 488 (1st Cir. 2003) (remanding for calculation of attorney fees since plaintiff had been a "prevailing party" recovering $35,000 in compensatory and punitive damages).

Further, monetary damages is not the sole, or even the most important measure of success. "[T]he relief actually achieved" or "the societal importance of the right which has been vindicated" is also of great importance. *Coutin v. Youg & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 388 (1st Cir. 1997).

Here, the parties' proposed settlement will make Joseph Giguere a "prevailing party" under our jurisprudence, creating a settlement fund for alleged overtime violations for himself and his fellow opt-ins. Public policy considerations support payment of the full lodestar fee because the FLSA is a remedial statute designed to protect the wages of workers. *See, A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted).

The recovery for the collective is equivalent to nearly two times Plaintiffs' calculation of overtime backpay, assuming a two-year statute of limitations, for the FLSA collective. The lawsuit has achieved greater protections for Joseph Giguere, and hopefully also for those other citizens in the community at large (including but not limited to the FLSA collective members here). In the circumstances of this case, therefore, "reasonable fees should be paid for time productively spent without any discount…." *Coutin*, 124 F.3d 331 at 399.

Furthermore, the rates charged are reasonable and consistent with rates awarded to attorneys in similar circumstances within this district. *See, e.g., DiFiore v. Am. Airlines*, No. 07–10070, 2010 WL 623635, at *5 (D.Mass. Feb. 18, 2010) (awarding lead attorney in a Massachusetts Tips Law action an hourly rate of $400); *Tuli v. Brigham & Women's Hosp., Inc.*, No. 07–12338, Mem. and Order Granting Att'ys' Fees, ECF No. 359, at *3–4 (D. Mass. Jun. 8, 2009) (Gertner, J.) (awarding the following hourly rates in a hostile work environment and retaliation action: $630–735 for partners, $570–615 for lead counsel, $410–495 for a fourth year associate, $320–385 for a second year associate, and $320 for a first year associate); *Walsh v. Boston Univ.*, 661 F.Supp.2d 91, 111 (D.Mass.2009) (awarding lead attorney in employment discrimination action an hourly rate of $350 an hour).

Here, Attorney Dinsmore is a partner at the firm of Hayber, McKenna & Dinsmore, LLC, a firm with three locations in Massachusetts and Connecticut that primarily focuses on employee civil rights cases and wage and hour class actions. *Exhibit K* at ¶ 8. As an attorney with 17 years of experience, he has been selected by *Super Lawyers* as a Rising Star in the field of Employment Law in 2015-2019, and was selected as a *Super Lawyer* from 2020-2023. *Id.* at ¶ 7. He represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations. *Id.* at ¶¶ 5-12. The rate claimed by Attorney Dinsmore for prosecuting class actions is $500 per hour and may be below the average rate for an attorney of his experience and credentials when controlling for inflation.[3] As of August 2, 2023, the date that Plaintiff filed his Assented-To Motion for FLSA Settlement Approval, Attorney Dinsmore and his firm have

---

[3] It should be noted here that the rates awarded in these cases are from 2010 or earlier. When controlling for inflation, according to the Bureau of Labor statistics CPI inflation calculator, from January of 2010 to February of 2023 (the latest month for which date is available) the rates would be 38.84% higher.

devoted 596.7 hours to this litigation. *Id.* at ¶ 24. The time may be summarized as follows:

| Attorney | Hours | Rate / Hour | Total |
|---|---|---|---|
| Attorney Raymond Dinsmore (17 years of practice) | 170.4 | $350/500 | $82,035.00 |
| Attorney Richard Hayber (31 years of practice) | 13.9 | $500 | $6,950.00 |
| Attorney Thomas Durkin (7 years of Practice) | 38.6 | $275/300 | $11,572.50 |
| Attorney Michael Petela (14 years of practice) | 40.7 | $400 | $16,280.00 |
| Ellen Wallin (Paralegal) | 3.9 | $125 | $487.50 |
| Shari Belanger (Paralegal) | 327.5 | $125 | $40,937.50 |
| Karen Dixon (Paralegal) | 1.7 | $125 | $212.50 |
| **Total** | | | **$158,475.00** |

Since then, Attorney Dinsmore has incurred an additional 12.7 hours of legal time toward the resolution of FLSA claims and will likely incur additional time (estimated at 8 hours) to bring the FLSA portion of claims to full resolution. *Id.* at ¶ 27.

### VI. This Court Should Approve the Proposed Distribution Plan Contained in the Settlement Agreement.

Pursuant to section 8.c. of the Settlement Agreement, through the proposed administrator *Simpluris*, the parties will mail the Notice and settlement checks within 14 days of the Defendants' final deposit into the Qualified Settlement Fund. The amount paid to the class shall consist of a base payment of $50.00 for each member of the collective plus an individualized amount reflective of said collective member's actual overtime damages. Simpluris shall be paid administrative costs totaling $5,827.41 for Distribution. *Exhibit B*. Simpluris previously incurred $2,922.71 for the Noticing of this matter. *Exhibit C*. The total administrative fee for the combined Noticing and Distribution is $8,750.12.

**VII.    Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that this Court grant approval of the proposed settlement.

Dated: February 2, 2024

Respectfully Submitted,

PLAINTIFF,
JOSEPH GIGUERE, individually and on behalf of all others similarly situated,

By his Attorneys:

   */s/ Raymond Dinsmore*
Raymond Dinsmore, Esq. (BBO # 667340)
rdinsmore@hayberlawfirm.com
Hayber, McKenna & Dinsmore, LLC
One Monarch Place, Suite 1340
Springfield, MA 01144
Tel: (413) 785-1400; Fax: (860) 218-9555

   */s/ Richard E. Hayber*
Richard E. Hayber, Esq. (Bar # ct11629)
rhayber@hayberlawfirm.com
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT 06103
Tel: (860) 920-5362; Fax: (860) 218-9555

## CERTIFICATE OF SERVICE

    I, Raymond Dinsmore, hereby certify that this document, filed through the CMECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 2, 2024, and to unregistered participants via email.

                                              */s/ Raymond Dinsmore*
                                              Raymond Dinsmore, Esq.